UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORRI A. SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:16-cv-02231-JMS-MJD ) |
| NANCY BERRYHILL,[1] *Acting Commissioner of the Social Security Administration*, | ) ) ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

On June 17, 2013, Plaintiff Lorri A. Smith filed a claim for disability insurance benefits under the Social Security Act ("SSA") alleging a disability onset date of June 4, 2013. [Filing No. 14 at 23.] Ms. Smith filed a claim for supplemental security income under the SSA on June 26, 2013 also alleging a disability onset date of June 4, 2013. [Filing No. 14 at 23.] Her claims were denied initially on October 8, 2013 and upon reconsideration on December 3, 2013. [Filing No. 14 at 23.] Administrative Law Judge Kimberly Sorg-Graves ("ALJ") held a hearing on January 21, 2015. [Filing No. 14 at 23.] On February 3, 2015, the ALJ issued a decision determining that Ms. Smith was not disabled as defined by the SSA. [Filing No. 14 at 30.] The Appeals Council denied Ms. Smith's request for review on June 24, 2016, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 14 at 5.] Ms. Smith filed this civil action on

---

[1] The Court has substituted Nancy Berryhill as the proper Defendant to this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017. *See* "Meet Our New Acting Commissioner," Social Security Administration Blog, *available at* http://blog.ssa.gov/meet-our-new-acting-commissioner/ (last visited May 10, 2017).

1

August 22, 2016 seeking judicial review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), asking the Court to review her denial of benefits. [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last ... not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can

perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. §§ 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868. If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# II.
## RELEVANT BACKGROUND

Ms. Smith was 53 years old at the time she applied for social security disability benefits.[2] [Filing No. 14 at 187.] She has completed 2 years of college. [Filing No. 14 at 206.] Her previous work experience includes working as a bus driver, billing clerk, and life insurance salesperson. [Filing No. 14 at 212-217.] Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Smith is not disabled. [Filing No. 14 at 30.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Smith had not engaged in substantial gainful activity since her alleged onset date.[3] [Filing No. 14 at 25.]

- At Step Two of the analysis, the ALJ found that Ms. Smith had the following severe impairments: diabetes mellitus and obesity. [Filing No. 14 at 25.]

- At Step Three of the analysis, the ALJ concluded that Ms. Smith did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 14 at 26-27.] The ALJ considered various listings in making that conclusion, but ultimately found that Ms. Smith did not meet any of them. [Filing No. 14 at 26-27.]

- After Step Three but before Step Four, the ALJ found that Ms. Smith had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) except that the claimant

---

[2] Both parties provided a detailed description of Ms. Smith's medical history and treatment in their briefs. [Filing No. 18; Filing No. 23.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Smith, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and 20 C.F.R. § 416.972(a).

can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. The claimant can stand and walk two hours of an eight-hour workday, and sit for six hours of an eight-hour workday. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can occasionally stoop, balance, kneel, crouch, or crawl. She can have no more than occasional exposure to extreme cold or heat. The claimant must have no more than occasional exposure to humidity or wetness." [Filing No. 14 at 27.]

- At Step Four of the analysis, the ALJ found that Ms. Smith was able to perform "past relevant work as a Billing Clerk." [Filing No. 14 at 29.]

- At Step Five of the analysis, the ALJ concluded that Ms. Smith was not under a disability. [Filing No. 14 at 30.]

Ms. Smith sought review of the ALJ's decision from the Appeals Council, but that request was denied on June 24, 2016, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 14 at 5.] Ms. Smith now seeks judicial review under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits. [Filing No. 1.]

### III.
### DISCUSSION

Ms. Smith presents two arguments in support of her request for review: (1) the ALJ failed to properly consider Ms. Smith's migraine headaches; and (2) the ALJ erred when he gave no credit to a portion of Ms. Smith's treating physician's opinion. The Court will address each of these issues in turn.

**A. Migraine Headaches**

Ms. Smith argues that the evidence in the record and her testimony during the hearing demonstrate that she suffers from migraine headaches. [Filing No. 18 at 11.] She argues that the

ALJ was "playing doctor" when she determined that Ms. Smith's migraine headaches are not severe. [Filing No. 18 at 14.] She further claims that the ALJ failed to consider whether the evidence regarding migraine headaches supports the possibility of equaling a listing. [Filing No. 18 at 11-16.] According to Ms. Smith, the ALJ failed to consider "the combination of both severe and non[-]severe impairments in her decision" on Ms. Smith's ability to work. [Filing No. 18 at 16.] Ms. Smith claims that the ALJ cherry-picked evidence that supported a finding of no disability while ignoring evidence which points to a disability finding. [Filing No. 18 at 18.]

In response, the Commissioner asserts that the ALJ "reasonably determined that Plaintiff had no headache limitations." [Filing No. 23 at 7.] The Commissioner claims that the ALJ discussed Ms. Smith's complaints to her treating physicians regarding headaches but that these complaints did not mention aura, intractable migraines, or status migraines which contradicts Ms. Smith's "allegations that her migraine headaches lasted for up to a week, her medication only occasionally helped, and that she had excessive side effects such as somnolence." [Filing No. 23 at 7.] The Commissioner claims that the ALJ "highlighted that there is no record of [Ms. Smith] seeking emergency treatment . . . and that the medical evidence does not support a finding that the frequency, intensity, or duration of [Ms. Smith's] headaches constituted a severe impairment with the use of her prescribed medication." [Filing No. 23 at 7.] The Commissioner further claims that the ALJ considered Ms. Smith's medical treatment history, use of pain relievers, and her activities of daily living when assessing how her symptoms limited her functioning. [Filing No. 23 at 7-8.]

In reply, Ms. Smith claims that the Commissioner is reformulating the medical evidence and making prohibited post hoc justifications "for the ALJ's failure to articulate, explain, or grapple with the evidence." [Filing No. 24 at 1.]

The Court "will uphold the ALJ's decision if it is supported by substantial evidence, that is, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (citing *Richardson v. Perales*, 402 U.S. 389 (1971); *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013)). The Court will not reweigh the evidence or substitute its own judgment for that of the ALJ, but it will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow the Court to assess the validity of the agency's ultimate findings and afford meaningful judicial review. *Moore*, 743 F.3d at 1121 (citing *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Pepper*, 712 F.3d at 362; *Villano*, 556 F.3d at 562. A decision that lacks adequate discussion of the issues will be remanded. *Moore*, 743 F.3d at 1121.

If debilitating enough, migraines could be part of a severe combination of impairments that could result in a finding of disability or could require further restrictions in the RFC. *See Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (finding that although the claimant's headaches were part of the severe combination of impairments at Step Two, the ALJ failed to build a logical bridge at Step Four when he implied that the claimant "did not actually suffer from migraines. . . .").

The Court notes at the outset that the ALJ discussed Ms. Smith's migraine headaches under Step Two of the analysis, but found that they were not a severe impairment. [Filing No. 14 at 26.] Even if the migraine headaches were not a severe impairment, the ALJ must still consider this evidence in the subsequent steps of the analysis to determine whether Ms. Smith has any resulting functional limitations. *See, e.g., Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although

[certain] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether.")

Ms. Smith cites to a headache questionnaire that she completed. [*See* Filing No. 14 at 219 (noting that Ms. Smith takes medication for her headaches; stating that Ms. Smith gets headaches "three to four times a month"; reporting that Ms. Smith's headaches last "one to five days"; describing typical headaches as involving "nausea, vomiting, blurred visions, will see auruas [sic]").] She also states that during the consultative examination, she indicated that she experienced migraines, and during her hearing, she testified about her migraines. [*See* Filing No. 14 at 55; Filing No. 14 at 270-71.] She claims that the ALJ failed to consider this evidence in determining whether she met a listing or whether it affected her RFC determination. The Court agrees that the ALJ did not consider whether her migraine headaches equaled a Listing of Impairments. This is likely because the ALJ did not find them to be a severe impairment. However, the Court has no way of knowing since the ALJ does not provide an explanation, and the Commissioner does not respond to this specific argument.

Moreover, nowhere in the RFC analysis does the ALJ discuss Ms. Smith's migraine headaches. [*See* Filing No. 14 at 27-29.] The Commissioner in response gives some reasons why the evidence is inconsistent with Ms. Smith's subjective complaints, but these arguments are impermissible post hoc justifications not raised by the ALJ, and the Court will not consider them. *See, e.g., Spiva v. Astrue,* 628 F.3d 346, 348 (7th Cir. 2010). Given that there is no discussion of Ms. Smith's headaches or migraines in the ALJ's RFC analysis, the Court cannot speculate that the ALJ actually considered this evidence or her testimony. *Moore*, 743 F.3d at 1124 ("The error here is the failure to address all of the evidence and explain the reasoning behind the decision to credit some evidence over the contrary evidence, such that we could understand the ALJ's logical

bridge between the evidence and the conclusion. By failing to even acknowledge that evidence, the ALJ deprived us of any means to assess the validity of the reasoning process."). The ALJ must discuss whether she meets a listing, incorporate to what extent Ms. Smith's migraines affect her RFC, and whether she experiences any side effects from taking medication for it. Accordingly, the ALJ's decision requires remand for the reasons stated above.

### B. Treating Physician's Opinion

Ms. Smith raises several objections regarding the ALJ's treatment of the opinion from Dr. Muhler, her treating physician. [Filing No. 18 at 18.] Ms. Smith argues that although she gave great weight to Dr. Muhler's opinion, the ALJ gave no credit to a portion of his opinion regarding Ms. Smith's inability to perform any postural stance. [Filing No. 18 at 18.] Ms. Smith argues that "the ALJ fails to explain how this portion of Dr. Muhler's opinion is inconsistent with the rest of Dr. Muhler's opinion and the record as a whole." [Filing No. 18 at 18.] She claims that "[t]he ALJ has impermissibly cherry picked certain aspects of Dr. Muhler's opinion to support her conclusion that Smith can still occasionally perform postural activities." [Filing No. 18 at 18.] Ms. Smith further claims that the ALJ drew an impermissible assumption when she stated that Dr. Muhler erred in his assessment due to his lack of familiarity with agency standards. [Filing No. 18 at 19.] Lastly, Ms. Smith asserts that the ALJ failed to contact Dr. Muhler to clarify the basis of his opinion. [Filing No. 18 at 19.]

In response, the Commissioner claims that "[t]he ALJ gave adequate reasons for [her] weigh[t] of Dr. Muhler's postural restrictions." [Filing No. 23 at 9.] The Commissioner claims that parts of Dr. Muhler's examination records indicate that Ms. Smith is able to perform certain functions that, in turn, are not consistent with Dr. Muhler's opinion, which imposes postural restrictions. [Filing No. 23 at 9-10.] The Commissioner claims that the ALJ "compared Dr.

9

Muhler's opinion to Dr. Rice's opinion and wrote that Dr. Rice proposed no postural restrictions." [Filing No. 23 at 9.] The Commissioner further claims that although the ALJ is "not required to outline every piece of evidence inconsistent with Dr. Muhler's postural restrictions," Dr. Rice "did not note any significant functional limitations" and concluded that Ms. Smith "could perform normal movements like walking, sitting, squatting . . . ." [Filing No. 23 at 9].

In reply, Ms. Smith again does not appear to specifically respond to the Commissioner's claims but argues that the Commissioner's "post hoc justifications cannot make up for the ALJ's failure to articulate, explain, or grapple with the evidence." [Filing No. 24 at 1.]

Under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances.[4] *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015). Section 404.1527(c)(2) provides that "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938. If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply the factors under 20 C.F.R. § 404.1527(c)(2)-(6).

---

[4] The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 82 Fed. Reg. 5844-01. The new regulations in part eliminate the treating-physician rule, which gives more weight to the evidence of disability from acceptable medical source providers who have an ongoing relationship with the claimant. 82 Fed. Reg. 5844-01. The SSA "adjudicators will [now] articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an [acceptable medical source] . . . ." 82 Fed. Reg. 5844-01. Because Ms. Smith applied for disability benefits before March 27, 2017, these changes will not apply to the review of her claim.

10

Here, the ALJ gave great weight to Dr. Muhler's medical source statement. [Filing No. 14 at 29.] However, she gave no credit to a portion of Dr. Muhler's opinion regarding Ms. Smith's inability to perform any postural stance, but the Court finds no error because the ALJ provided adequate reasons. The ALJ stated that the portion of the opinion regarding Ms. Smith's postural stance was "inconsistent with rest of his opinion and the record as a whole." [Filing No. 14 at 29.] In the same paragraph, the ALJ also evaluated the opinion of Dr. Rice, the state agency physician who examined Ms. Smith. The ALJ also gave Dr. Rice's opinion great weight, and noted that Dr. Rice reported that Ms. Smith "has a wide based gait [ ] which is generally congruent with Dr. Muhler's opinion," but otherwise has no functional limitations. [Filing No. 14 at 29.] As the Commissioner contends, this is one example of evidence that indicates some inconsistency with Dr. Muhler's findings.

Ms. Smith also argues that when the ALJ assessed Dr. Muhler's opinion regarding Ms. Smith's postural stance, she made an impermissible assumption that Dr. Muhler lacked familiarly with agency standards, and she further claims the ALJ should have contacted Dr. Muhler to get complete and specific findings regarding his opinion. The Court, however, finds no error with the ALJ's statement since, in any event, the ALJ gave great weight to Dr. Muhler's overall opinion, and provided other adequate reasons for giving no credit to Dr. Muhler's evaluation of Dr. Smith's postural stance.

When the treating physician's opinion does not receive controlling weight, the ALJ must discuss the factors under 20 C.F.R. § 404.1527(c)(2)-(6): the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability from relevant evidence, and the consistency of the opinion, among other factors. Here, the ALJ does mention what evidence is inconsistent with Dr. Muhler's opinion about Ms. Smith's postural

11

stance, but nowhere in the decision does the ALJ discuss Ms. Smith's treatment relationship or history with Dr. Muhler, or what other records support Dr. Muhler's opinion. Although Dr. Muhler's overall opinion receives great weight, because she gives no credit to one portion of the opinion and, in any event, the Court is remanding this decision on the first issue, the ALJ on remand should provide more details with respect to the 20 C.F.R. § 404.1527(c)(2)-(6) factors when addressing Dr. Muhler's opinion.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decisions denying Ms. Smith's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. 405(g)(sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: June 5, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov